**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fernando E. Hernandez,<br><br>        Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>        Defendant. | No. CV-13-00549-PHX-NVW<br><br>**ORDER** |

    Plaintiff Fernando E. Hernandez seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    BACKGROUND**

    **A.    Factual Background**

    Hernandez was born in May 1955 and was 50 years old on December 22, 2005, the alleged disability date. He has a ninth grade education, a GED, and an Associate Degree, which he earned while in prison by attending three-hour classes four or five days a week. He is able to communicate in English.

Hernandez worked as a drywall installer and groundskeeper before his incarceration of nearly 16 years. While in prison, Hernandez participated in vocational, rehabilitation, and apprenticeship programs, involving electrical, air conditioning, plumbing, and computer training. He testified that he worked or was in training four to six hours a day for most of the time he was in prison. He worked as a teacher's aide for computer classes and as a clerk using word processing, database, and spreadsheet applications.

In January 2009, Hernandez testified that his worst medical problem was his mental capacity and his second worst was his lower back problem. He said that he was diagnosed as having bipolar disorder in about 2006 and his lower back problem was diagnosed in 1993. He also testified that he was able to lift 25 pounds occasionally and 15-20 pounds frequently. In November 2011, Hernandez testified that he spends about an hour a day reading, and he usually watches television, listens to music, cleans his room, and uses a computer at home. He prepares his own meals, does laundry, and takes showers without assistance.

### B.     Procedural History

Hernandez originally made a claim for disability insurance benefits, alleging that he became disabled in 1992, while in prison. Because prisoners may not collect disability insurance benefits and Hernandez's disability insurance coverage ended in 1993, his claim was converted into a claim for supplemental security income with an alleged onset date of December 22, 2005, which is the day he filed his disability claim. After three administrative hearings and an initial ALJ decision that was vacated by the Appeals Council, a second ALJ decision issued a decision on February 16, 2012, that Hernandez was not disabled within the meaning of the Social Security Act. On January 18, 2013, the Appeals Council denied Hernandez's request for review of the second hearing

decision, making the ALJ's decision the Commissioner's final decision. On March 15, 2013, Hernandez sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

## III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears

the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Hernandez meets the insured status requirements of the Social Security Act through December 21, 1993, and that he has not engaged in substantial gainful activity since December 13, 2005, the alleged onset date. At step two, the ALJ found that Hernandez has the following severe impairments: degenerative disc disease of cervical and lumbar spine, obesity, a bipolar disorder, post-traumatic distress disorder, an anxiety disorder, dysthymic disorder, and a substance abuse disorder. At step three, the ALJ determined that Hernandez does not have an impairment or

combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that Hernandez:

> has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited to jobs requiring no more than simple, routine and repetitive tasks.

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(c). The ALJ further found that Hernandez has no past relevant work. At step five, the ALJ concluded that, considering Hernandez's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Hernandez can perform.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing the Medical Source Opinions.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there

must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31. The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. The ALJ is not bound by any findings made by State agency medical or psychological consultants, but must consider their findings and opinions, except for the ultimate determination of whether the claimant is disabled. 20 C.F.R. § 416.927(e)(2)(i).

A nurse practitioner is not an acceptable medical source. 20 C.F.R. § 416.913. Evidence from nurse practitioners may be considered to show the severity of a claimant's impairment and how it affects his ability to work, but may be discounted if the ALJ states "reasons germane to each witness for doing so." *See* 20 C.F.R. § 416.927(d)(1); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### 2. State Agency Reviewing Medical Consultants Samuel Blumenford, M.D., Robert S. Hirsch, M.D., and Eugene Campbell, M.D.

On September 5, 2006, Dr. Blumenford reviewed Hernandez's medical records. He opined that Hernandez's mental impairments caused mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On a separate, more detailed evaluation form, Dr. Blumenford opined that Hernandez was not significantly limited in most areas and moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, accept instructions and respond appropriately to criticism from

supervisors, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.

On May 10, 2007, Dr. Hirsch reviewed Hernandez's medical records and Dr. Blumenford's September 5, 2006 evaluation. Dr. Hirsch opined that Dr. Blumenford's evaluation implied finding no functional impairment. After reviewing medical records from September through December 2006 related to Hernandez's physical impairments, Dr. Hirsch concluded that Hernandez "appears to remain somatically non severe."

On May 15, 2007, Dr. Campbell reviewed Hernandez's file, including additional information from EMPACT, the center where Hernandez had received mental health treatment. Without further explanation, Dr. Campbell concluded, "Prior decision is affirmed."

Although the ALJ was required to consider the findings and opinions of the State agency reviewing consultants, her hearing decision does not explicitly state that she did so. It can be inferred that the ALJ considered the consultants' reports, but concluded it was unnecessary to comment on their comments regarding the underlying medical records. However, if the ALJ erred by failing to explicitly state that she considered the findings and opinions of these State agency reviewing medical consultants, any such error would be harmless because none of the consultants found any physical limitations, and the mental limitations they identified were moderate and consistent with the ALJ's residual functional capacity assessment limiting Hernandez to jobs requiring no more than simple, routine, and repetitive tasks.

### 3. Psychological Consultative Examiner David Young, Ed.D.

On April 18, 2006, Dr. Young performed a mental status examination of Hernandez. He opined that Hernandez was "moderately limited (fair/limited but not precluded)" in the following abilities: remember locations and work-like procedures,

- 7 -

understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and be aware of normal hazards and take appropriate precautions. Dr. Young opined that Hernandez was not significantly limited or only mildly limited for each of the remaining abilities.

The ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. The ALJ gave Dr. Young's opinion "little weight because it is inconsistent with the objective longitudinal medical evidence of record of claimant's sporadic medical treatment, at best, noncompliance with medications, and drug use during the alleged disability period, which was not considered in the opinion." However, the ALJ expressly considered Hernandez's moderate limitations in concentration, persistence, and pace.

The reasons provided by the ALJ are specific and legitimate, and they are supported by substantial evidence in the record, which the ALJ described thoroughly. For example, the ALJ noted that Hernandez initially presented for mental health treatment on October 11, 2006, ten months after the alleged onset date of disability. Hernandez testified on November 20, 2011, that he missed mental health treatment quite a few times because he did not have transportation,[1] he had not consistently taken prescribed medication, and he had used cocaine two or three weeks before the hearing. These events all occurred after Dr. Young's examination on April 18, 2006, and were

---

[1] Hernandez testified that when he lived in Tempe, Arizona, he was able to take a bus to his mental health treatment, but now that he lives in Phoenix, he must rely on the mental health center sending a taxi to transport him.

properly considered by the ALJ as part of the objective longitudinal medical evidence of record.

Moreover, even if the ALJ should have given Dr. Young's April 18, 2006 opinion greater weight, any such error would be harmless because Dr. Young found, at most, moderate limitations, and the ALJ's residual functional capacity assessment limited Hernandez to jobs requiring no more than simple, routine, and repetitive tasks.

### 4. Treating Nurse Practitioner Susan Anderson, PMHNP

On August 10, 2007, NP Anderson assessed Hernandez as having moderately severe impairment, which seriously interferes with his ability to function, because his moods were not fully stabilized. She rated his understanding and memory as fair for very short and simple instructions as well as for detailed instructions, but she noted that Hernandez had not consistently taken medications as directed. She rated his ability to carry out very short and simple instructions as good and his ability to carry out detailed instructions a variable, depending on his mood status. She also rated as variable, depending on his mood, his ability to maintain attention and concentration for extended periods, sustain an ordinary routine without supervision, make simple work-related decisions, complete a normal work day and work week without interruption from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. But NP Anderson rated Hernandez's ability to interact with the general public as fair to good, his ability to ask simple questions or request assistance as good, and his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness as good.

On December 23, 2008, NP Anderson assessed Hernandez as being worse on every rating with no explanation other than "please see copies of records." Under "Appearance," she wrote "well groomed in casual clothing," but for the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and

cleanliness, she wrote "moderately severe," which the form defines as "impairment which seriously interferes with ability to function." She assessed the following abilities as "severe," which is defined as "extreme impairment of ability to function": understand and remember very short and simple instructions, understand and remember detailed instructions, work in coordination with or proximity of others without being distracted by them, complete a normal work day and work week without interruption from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation.

The ALJ had discretion to discount NP Anderson's opinion if she stated reasons germane to NP Anderson. The ALJ said she gave little weight to NP Anderson's December 23, 2008 Medical Source Statement because it was inconsistent with the objective medical evidence of record and the provider's own treatment records and because a nurse practitioner is not an "acceptable medical source." These reasons were germane to NP Anderson.

### B. The ALJ Did Not Fail to Fairly and Properly Consider All of the Relevant Evidence in Evaluating Hernandez's Physical Residual Functional Capacity and Determining He Could Perform a Full Range of Medium Work.

Hernandez contends the ALJ discussed the 2006 and 2007 evidence related to his lumbar spine impairment, but provided little discussion regarding evidence after 2007. Hernandez also contends that the ALJ noted he began to complain of neck and upper extremity impairment symptoms in January 2008 after he pushed a truck that ran out of gas, but the ALJ failed to address the cervical impairment evidence from 2007 to 2010 when she concluded that Hernandez can perform work at a medium exertional level.

Hernandez claims the ALJ erred by failing to note that even though his neck pain had resolved by October 2010, it reoccurred after he subsequently fell.

It is Hernandez's burden to prove that he is not able to perform jobs requiring no more than simple, routine, and repetitive tasks at a medium exertional level—and has not been able to do so since the date he alleges as the onset of disability, December 13, 2005. He has not amended his onset date to a later date.

The ALJ observed that none of the treatment records indicated that any treating physician had placed restrictions on Hernandez's activities. She noted that in May 2006, Hernandez reported to internal medicine consultative examiner Syed Masood, M.D., that his lower back pain had occurred "off and on" for the past 12 years, even though he had been able to perform work activity while in prison. She further noted that, following the physical examination, Dr. Masood described Hernandez as "muscularly built." He further reported, "Palpation of the spine reveals it to be normal up to his lower lumbar area but mild tenderness was observed in the lower lumbar and sacral areas" and "Range of motion in cervical, thoracic, lumbar and all joints is completely normal." Dr. Masood concluded that Hernandez had "some degree of hypertension and low back pain, but it does not seem to affect any movements of any parts of his body."

The ALJ noted that although Hernandez alleged low back pain since 1992 or 1993, he did not seek treatment for his musculoskeletal symptoms until September 2006, which was nine months after his alleged onset date of disability. An x-ray in September 2006 and an MRI scan in October 2006 showed mild degenerative disc disease in the lumbar spine. In March 2007, Hernandez's orthopedist offered lumbar spine surgery, but indicated it likely would not be beneficial for this disease. In July 2007, his orthopedist described him as a "very active gentleman." In January 2008, after pushing a truck, Hernandez reported neck pain, and surgery for the cervical spine was recommended. Hernandez did not have the surgery until August 2010. By October 2010, Hernandez

reported that his neck pain had resolved. In October 2011, after a significant gap in treatment, he complained of pain in the left lower neck and down the back of his arm. The ALJ noted that Hernandez reported that medications were relatively effective in controlling his symptoms.

Hernandez has not identified any evidence that the ALJ disregarded that would have supported his claim of disability beginning in December 2005. Chronic low back pain and neck pain that is intermittent and often described as mild does not necessarily preclude medium level work. Moreover, the ALJ was not required to defer to the more limited residual functional capacity assessment reached by a previous ALJ that had been vacated by the Appeals Council. The ALJ's residual functional capacity assessment is supported by substantial evidence and is not based on legal error.

### C. New Evidence Submitted to the Appeals Council Does Not Support Reversal of the ALJ's Decision.

On January 22, 2012, treating surgeon Jason Datta, M.D., completed a Physical Capacities Evaluation for Hernandez, which was not made available before the ALJ's hearing decision, but was submitted to the Appeals Council. Dr. Datta stated that he had treated Hernandez since November 20, 2006 for chronic back and neck pain. He rated Hernandez's pain as moderate and fatigue as mild. In response to the question whether the claimant has the stamina and ability to maintain sufficient pace and attention to sustain a full-time work schedule, Dr. Datta wrote, "Pain limits ability to work." Dr. Datta also commented that Hernandez had "no specific restrictions" and "Pain causes patient to self limit activities."

Dr. Datta opined that in an 8-hour workday, Hernandez can sit, stand, or walk for an hour at one time and can sit for a total of 4 hours, stand for a total of 2 hours, and walk for a total of 1 hour. He further opined that Hernandez can lift up to 5 pounds frequently, 6-25 pounds occasionally, and never more than 25 pounds. He opined that Hernandez

- 12 -

can carry up to 20 pounds frequently, 21-25 pounds occasionally, and never more than 25 pounds. He opined that Hernandez can occasionally bend, squat, crawl, climb, and reach and can use both hands and feet for repetitive movements.

Hernandez asks the Court to find that Dr. Datta's evaluation supports a determination that, at most, he has been able to perform only a limited range of sedentary work since 2006. As found above, the objective medical evidence, inconsistent and conservative treatment, and Hernandez's reports of his physical activity contradict Dr. Datta's conclusion. Therefore, the Court does not find grounds for reversing the determination of the Appeals Council.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 29th day of October, 2013.

_____
Neil V. Wake
United States District Judge